John R. MALEK, Appellant,

v.

Laurie Smith CAMP, Bruce C. Kramer, Gene Hruza, Gary Grammer, Howard Ferguson, Neil Lindenbaum, Major Loock, and Sgt. Manske, Appellees.

No. 86–1862.

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1987.

Decided July 8, 1987.

Rehearing and Rehearing En Banc Denied Aug. 6, 1987.

Robert M. Slovak, Omaha, Neb., for appellant.

Sharon Lindgren, Asst. Atty. Gen., Lincoln, Neb., for appellees.

Before ARNOLD and FAGG, Circuit Judges, and WRIGHT,* District Judge.

ARNOLD, Circuit Judge.

This is a pro se appeal from a final decision of the District Court[1] dismissing John R. Malek's 42 U.S.C. § 1983 complaint as frivolous. Malek argues, among other things, that his Fourteenth Amendment right to due process was violated because a prison disciplinary committee refused to hear any witnesses on his behalf at his hearing and the chairman of the disciplinary committee failed to recuse himself despite knowing that Malek had assisted another inmate in filing a suit against the committee chairman. Because Malek's allegations, when accepted as true and viewed in the light most favorable to the pro se complainant, adequately state a claim that the chairman of the disciplinary committee was personally biased against Malek, we reverse in part and remand the case to the District Court for further proceedings.

I.

Malek, an inmate at the Lincoln Correctional Center, filed this civil-rights action against various prison officials employed at the Diagnostic and Evaluation Center (D.E.C.) alleging violations of his Eighth and Fourteenth Amendment rights.[2] The claims arose out of Malek's refusal to participate in mandatory gym activities and the resulting disciplinary action imposed. On October 19, 1984, Malek told defendant Patterson that he was unable to attend gym because he suffered from "flu-like symptoms: nausea, throbbing headache [and] fever." Malek asked for a medical examination. His request was denied; however, he was provided with some aspirin. Officer Patterson then informed Malek that he was expected to attend the scheduled gym activity. Malek refused. When it became clear that Malek would not leave his cell, Officer Patterson filed a disciplinary report against him for "Disobeying Direct Orders" and "Unauthorized Areas." Both rules are "Class II Offenses," and each provides for a penalty of up to 45 days confinement in disciplinary segregation or up to 45 days loss of good time. See State of Nebraska, Department of Correctional Services Rules 5[E] and [J], and 9(b).

Sergeant Manske was assigned to investigate the charges filed against Malek. Sergeant Manske interviewed Malek, Patterson, and Lieutenant Akins, Patterson's supervisor. Sergeant Manske, however, denied Malek's request to interview two other prison officials and five fellow inmates. Malek was permitted, though, to obtain a written statement from an inmate supporting his contention that on the day in question Malek was, in fact, too ill to attend gym activities. Malek also obtained the (unspecified) testimony of an Officer Bandar. At the conclusion of the investigation, Sergeant Manske recommended that Malek be prosecuted for the charged disciplinary violations.

At his hearing before the Adjustment Committee, Malek presented the inmate's written statement, and his own testimony, and cross-examined Sergeant Manske. The Committee—composed of defendants Ferguson (Chairman), Lindenbaum, and Loock —however, denied Malek's request to call

* The Hon. Scott O. Wright, Chief Judge, United States District Court for the Western District of Missouri, sitting by designation.

1. The Hon. Warren K. Urbom, United States District Judge for the District of Nebraska.

2. Specifically, Malek named as defendants: Laurie Smith Camp (Disciplinary Appeals Board Chairman); Bruce C. Kramer (Disciplinary Appeals Board member); Gene Hruza (Disciplinary Appeals Board member); Gary Grammer (Superintendent of the D.E.C.); Howard Ferguson (Assistant Superintendent of the D.E.C.); Neal Lindenbaum (Adjustment Committee member, D.E.C.); Major Loock (Major, Guard Force, D.E.C.); Ken Patterson (Corporal, Guard Force, D.E.C.); Lieutenant Akins (Guard Force, D.E.C.); and Sergeant Manske (Investigating Officer, D.E.C.).

13 (unidentified) witnesses, finding that the proffered testimony would be redundant and irrelevant. The Committee also refused Malek's request to cross-examine the other prison officials involved in the investigation. At the close of the hearing, the Committee found Malek guilty of violating both disciplinary rules and imposed a penalty of seven days room restriction.

Malek appealed the Committee's decision to the Appeals Board pursuant to Nebraska Correctional Rule 14. On appeal, he charged that the Committee acted improperly when it limited his presentation of evidence to only the written statement of one fellow inmate. Malek also claimed that Ferguson, in light of his knowledge that Malek prepared a civil action filed against him shortly before the hearing, should have recused himself from the proceedings. Although the Board had the power to hear witnesses, it apparently did not exercise that authority in Malek's case. After reviewing the record, the Board denied Malek's appeal and upheld the Committee's decision.

Following the Appeals Board's decision, Malek filed this § 1983 suit against the various prison officials involved in the disciplinary proceedings, alleging violations of his Eighth and Fourteenth Amendment rights. Of the numerous charges set forth in the complaint, only two claims need to be addressed on appeal: (1) whether the Committee's refusal to allow Malek to call all of his requested witnesses at the hearing violated Malek's Fourteenth Amendment right to due process, and (2) whether Malek's allegation that Chairman Ferguson was biased against him because Malek assisted a fellow inmate in filing a suit against Ferguson adequately stated a ground for relief under § 1983.

The District Court, pursuant to 28 U.S.C. § 1915(d), dismissed Malek's complaint as frivolous before Malek served any of the defendants.[3] The Court turned first to Malek's claim that the Committee violated his due-process rights when it limited Malek's evidence to only his testimony and the written statements of the inmate. The Court held that the Committee was not obligated to review all of the evidence Malek wished to offer, especially when the proffered testimony merely restated the positions outlined in the testimony that was already submitted. The Court then ruled that Malek's allegations of bias on the part of the disciplinary committee lacked sufficient specificity and dismissed the complaint.[4]

## II.

Both of Malek's claims raise the same ultimate issue on appeal: whether the District Court erred in dismissing Malek's complaint as frivolous. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts entitling him to relief. *Thomas W. Garland, Inc. v. City of St. Louis*, 596 F.2d 784, 787 (8th Cir.), *cert. denied*, 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979). Whether a complaint states a cause of action is a question of law which this Court reviews *de novo*. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.1986). On review, this Court "must presume that the factual allegations of the complaint are true and accord all reasonable inferences from those facts to the non-moving party." *Holloway v. Lockhart,* 792 F.2d 760, 762 (8th Cir.1986). Moreover, where the complaint is filed pro se, it is subject " 'to less stringent standards than formal pleadings drafted by lawyers.' " *Toombs v. Bell*, 798 F.2d 297, 298 (8th Cir.1986) (citations omitted).

**3.** On appeal, the Nebraska Attorney General's office appeared and argued, as *amicus curiae*, on behalf of the defendant prison officials. At oral argument, the Attorney General stated that if summonses had been issued, the Attorney General's office would, in all likelihood, have represented the defendants. Thus, it is not unfair to defendants for us to decide now whether Malek's petition states a claim for relief.

**4.** The court also dismissed Malek's Eighth Amendment claim charging that defendant Patterson failed to provide him with adequate medical treatment. It is clear that, in providing Malek with aspirin to relieve his symptoms, defendant Patterson did not act with deliberate indifference to Malek's medical needs. See *Jorden v. Farrier*, 788 F.2d 1347, 1348 (8th Cir. 1986).

Malek contends that in allowing him to submit only the written statement of one inmate on his behalf and in denying him permission to call approximately 13 witnesses, the disciplinary committee violated his Fourteenth Amendment right to due process.

■ Where "an inmate is deprived of privileges or placed in a special confinement status in order to punish him for past misconduct, then due process requires some kind of hearing beforehand." *Jones v. Mabry,* 723 F.2d 590, 594 (8th Cir.1983), *cert. denied,* 467 U.S. 1228, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984). Inmates "duly convicted of crime may not be subjected to additional punishment, not contemplated in their sentence of imprisonment, without due process of law." *Id.* The Supreme Court, in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), established certain minimum due-process rights that must be allowed prisoners in disciplinary proceedings. The *Wolff* Court wrote that:

> [T]he inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense ... [; however,] [p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses ... as well as to limit access to other inmates to collect statements or to compile other documentary evidence.

418 U.S. at 566, 94 S.Ct. at 2979. The inmate's right to present witnesses is, then, "necessarily circumscribed by the penological need to provide swift discipline in individual cases." *Ponte v. Real,* 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553 (1985). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.... [T]here must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Wolff,* 418 U.S. at 556, 94 S.Ct. at 2974 (citations omitted). When a disciplinary committee decides not to hear a requested witness, it is useful for it to indicate "whether [the denial was] for irrelevance, lack of necessity, or the hazards presented in individual cases." *Id.* at 566, 94 S.Ct. at 2979. Prison officials may not, however, arbitrarily deny an inmate's request to present witnesses or documentary evidence. *Ponte,* 105 S.Ct. at 2195–97.

■ We agree with the District Court that, in the unique context of the prison environment, the Committee did not violate Malek's Fourteenth Amendment due-process rights when it accepted only the written statement of a fellow inmate. In a court of law, of course, such a statement would have little chance of being admitted into evidence, or of being persuasive.. But as the *Wolff* Court recognized, disciplinary proceedings are of a special character, and allowing inmates to present witnesses "as a matter of course" would make such proceedings "tend towards unmanageability." 418 U.S. at 567, 94 S.Ct. at 2980. Here, Malek testified on his own behalf and introduced the statement of another inmate supporting his claim that on the day in question he was, in fact, too ill to attend gym. In his complaint, Malek stated only that the proffered live testimony would similarly have supported his contention. Under those circumstances, we agree that the Committee did not violate Malek's due-process rights when it determined that the offered testimony was not reasonably necessary to resolve the conflict and would cause undue delay. Thus, the District Court correctly determined that, as a matter of law, Malek could prove no set of facts entitling him to relief on this claim.

### III.

■ We do not agree, however, with the District Court's determination that Malek's allegations of bias against Chairman Ferguson failed to state a claim for relief under § 1983.

Though a prisoner's rights "may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." *Wolff,* 418 U.S. at 555, 94 S.Ct. at 2974.

816

"[A]n impartial decision-maker is a fundamental requirement of due process ... fully applicable" in the prison context. *Id.* at 592, 94 S.Ct. at 2992 (Marshall, J., concurring). The requirement of a neutral and detached decision-maker must not be impaired, but disqualification is not necessary in every case of claimed bias. *Redding v. Fairmen,* 717 F.2d 1105, 1112 (7th Cir. 1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984). "[D]ue process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or has had any other form of personal involvement in the case." *Wolff,* 418 U.S. at 592, 94 S.Ct. at 2992 (Marshall, J., concurring).

Malek alleged that Ferguson knew that he had prepared and filed a suit on behalf of a fellow inmate naming Ferguson as a defendant several days prior to the hearing and, because of that action, Ferguson was biased against him. Malek claims, therefore, that Ferguson should have recused himself from the disciplinary proceedings. This is, then, a situation where the complainant alleges a "personal" bias, as opposed to an "institutional" bias, as was the case in *Dace v. Mickelson,* 797 F.2d 574 (8th Cir.1986), *vacated on other grounds,* 816 F.2d 1277 (1987) (en banc). In *Dace,* appellant, an inmate at the South Dakota State Penitentiary, objected to the presence of an Assistant Attorney General on the parole board after he filed an unrelated habeas corpus action against a respondent represented by the South Dakota Attorney General. Unlike the present situation, however, Dace did not allege that the parole board member was in any way personally involved in the pending habeas action. We held, therefore, that the parole board member "did not have interests adverse to Dace so direct, personal, and substantial as to give rise to a due-process violation." 797 F.2d at 578 n. 6.

In the case at bar, though, Malek alleges the type of direct, personal, and substantial interests absent in *Dace.* Malek claims that Ferguson was biased against him because he prepared and filed a suit naming Ferguson specifically as a defendant. This

case, then, is more akin to the situation addressed by the Seventh Circuit in *Redding v. Fairman.* In *Redding,* several prison inmates challenged the Illinois Department of Corrections' disciplinary hearing procedures. Three of the appellants had unrelated civil actions pending against various members of the prison Adjustment Committee at the time of their disciplinary hearings. In each instance, the Committee members refused to recuse themselves. The District Court ruled that due process required committee members who were defendants in the unrelated actions to recuse themselves from the panel hearing the disciplinary case of the plaintiff-prisoner. The Seventh Circuit reversed the lower court's decision, but it did not order dismissal of the complaint. Instead, it remanded the case for a determination of "the extent of the Committee members' personal involvement in [the civil] lawsuits." 717 F.2d at 1113. In reaching that conclusion, the *Redding* Court carefully balanced the inmates' right to due process with the prison officials' unique concerns:

> [Where] an Adjustment Committee member is a defendant in the unrelated action named [only] in her or his administrative capacity for performing ministerial duties, then the Committee member may have little personal involvement in the case. Under these circumstances, the Committee member's ability to serve as a neutral and detached decisionmaker at a hearing involving the plaintiff-prisoner may not be impaired, and disqualification may not be necessary. From a practical standpoint, requiring each staff member who is the subject of a separate lawsuit to disqualify himself from sitting in judgment of that inmate would heavily tax the working capacity of the prison staff.

> \* \* \* \* \* \*

> For these reasons, the disqualification issue should be decided on a case-by-case basis.

*Id.*

The question here is close, especially because Malek was not actually a party to the suit against Ferguson. But the degrees of

Malek's participation and Ferguson's involvement go to the ultimate issues to be resolved by the District Court. All we hold today is that, if true, Malek's claim that Chairman Ferguson was personally biased against him because of Malek's involvement in a separate, pending action naming Ferguson as a defendant states a ground for relief under § 1983. We add that the courts should be alert not to sustain routine or pro forma claims of disqualification. If, for example, a particular inmate makes a habit of suing members of disciplinary committees, his later requests for recusal should be taken *cum grano salis.* This case comes to us only on the pleadings, and we do not know enough about this particular disqualification request to justify dismissing it out of hand.

## IV.

Accordingly, we reverse the District Court's decision insofar as it dismissed Malek's claim regarding Chairman Ferguson's alleged bias and remand that portion of the case for further proceedings. The Court's decision is affirmed in all other respects, and the complaint is dismissed with prejudice as to all defendants other than Mr. Ferguson. He is of course free on remand to assert any appropriate defense, including that of qualified immunity.

FAGG, Circuit Judge, concurring and dissenting.

I agree with the court that Malek was not denied due process by the prison disciplinary committee's limitations on his presentation of evidence; however, because I believe Malek's complaint also fails to state a claim based on the lack of an impartial decisionmaker, I respectfully dissent.

Malek's discipline was upheld by an appeals board. While such a circumstance would be irrelevant in a case involving a court adjudication, *see Ward v. Village of Monroeville,* 409 U.S. 57, 61–62, 93 S.Ct. 80, 83–84, 34 L.Ed.2d 267 (1972), I do not believe the same conclusion should follow in the case of prison disciplinary proceedings. The Supreme Court has recognized that "one cannot automatically apply procedural rules designed for free citizens in an open society * * * to the very different situation presented by a [prison] disciplinary proceeding." *Wolff v. McDonnell,* 418 U.S. 539, 560, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974).

I believe a prison disciplinary hearing and the accompanying administrative review should be considered a unitary proceeding. Due process would then depend not on the internal integrity of distinct trial and appellate tiers but on the fairness of prison disciplinary procedures taken as a whole. Specifically, there would be no prejudice from a biased decisionmaker, and no constitutional violation, if a neutral appeals board found in the record the minimal "some evidence" needed to sustain the prison disciplinary action. *See Superintendent v. Hill,* 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985).

In this case Malek makes no claim, beyond a conclusory allegation of "conspiracy," that the prison appeals board was other than neutral; and he does not challenge the sufficiency or integrity of the record before the board or the board's apparent failure to exercise its power to call witnesses (except as to the disallowance of certain witnesses, an issue of which the court has already disposed). Under these circumstances the board's impartial determination of the sufficiency of the evidence to support Malek's discipline purges any taint at the hearing level. In the context of prison discipline, due process cannot require more process for Malek.

I would affirm the order of the district court.